No. 8190

**8190**

COURT OF APPEAL

PARISH OF ORLEANS.

————

OSCAR P. MOHR

vs.

FOUR BROTHERS ICE CREAM COMPANY.

————

————

Court of Appeal

PARISH OF ORLEANS

16/22

Stansbury

**8190**

Dinkelspiel; J.

The plaintiff, an architect in the city of New Orleans sues the defendant for the sum of $300.00, being for plans, specifications and extra work, balance due plaintiff on alleged contract to erect a two story building for defendant costing the sum of about $7500.00; that defendant had frequently promised after paying $300.00 on the original bill, which was for $450.00 to pay the remainder, failing to do so, hence this suit.

The defendants, for answer,/pleading first a general denial, admit that plaintiff did present them certain drawings and specifications, but denied that same were drawn under any contract made between parties or that plaintiff obtained estimates and bids for same, they admit that plaintiff presented them with a bill for $450.00, $300.00 of which was paid by them through error, they deny that they had ever in any way ordered the plans and specifications as drawn up by plaintiff, that he did so without their consent or agreement and contrary to their expressed orders and they allege that they wanted plans for a building on the rear of their property, 810 So. Rampart Street, in this City, which was to cost not exceeding $3000.00, that plaintiff understood their orders, but contrary to same presented a plan for building entirely unnecessary for their business, absolutely beyond their means for payment, of which fact plaintiff was notified and to which he did not pay the slightest attention and that if they were able to have read the English language, to which they were foreigners, and had understood the plans and specifications presented to them, they would have never paid $300.00, which they paid under alleged false representations by plaintiff and for which they ask, in reconvention, a judgment and the dismissal of plaintiff's suit.

Without entering into a full discussion of all the testimony in this case, together with the plans and bids for work and specifications presented by plaintiff in his testimony and annexed to this record, plaintiff swears most posi-

305

tively that before drawing up these plans at his office in this city, under an appointment with one of the defendants who called to see him, Mr. Nick Kleanennaks, on or about the 19th of October 1919, stating that he had been referred to him by Gerber Brothers who were landlords of the defendants and for whom plaintiff had remodeled building occupied by them and he testifies that defendants told him that they wanted to build a bakery on the rear of the property 810 So. Rampart Street and they discussed the building and everything in reference thereto and that he wanted to build a modern up to date building which would cost between Seven and Eight thousand dollars, and would be a very modern, sanitary and absolutely up to the last building code, and that he was authorized to prepare the plans and specifications in accordance with that wish and which he did and this conversation took place between the parties mentioned at plaintiff's office.

He further testified that he prepared the plans discussed and agreed upon between him and the defendant and on the 6th of November, following, presented a bill for services rendered for $450.00; that was the usual terms for architects work; of the          building was completed he was to get ten per cent of the amount it would cost; if not, he was to get three fifths of that amount for plans and specifications.

He goes on at great length in his testimony to state what he did, that he had the place surveyed by a surveyor, for which the defendant paid the bill and says that when he presented the bill that he was told by Kleanennaks that they were a little pressed for money but that he would pay him two hundred dollars cash and pay the balance within a month; he was desirous then of building a much cheaper building, the whole not to exceed three thousand dollars; he further testified substantially that there was a contractor by the name of McGovern who subsequently erected the building for defendants at a much less cost and that he, plaintiff would have nothing further to do with the

306

matter, he claims the additional fifty dollars as compensation for endeavoring to get lower estimates for the building, but the best he could do was to get a two story building, doubtless complete in every way, but much more expensive than the defendants wish to pay, he details many conversation all in the English language, which he had, particularly with the defendant named and that when he found that he could not erect the building as desire by the defendants he had no further connection with them and refused to have any; he admits that these parties all spoke broken English but he did not know that they could neither read nor write.

In behalf of the defendants, there were four witnesses. The first, Mr. Q. Gerber, who had known both plaintiff and defendants for many years, the defendants being for years, his tenents in the building referred to and they were neighbors; he testified that Mr. Klesnennaks informed him that he was going to build a single story bakery, that he had an old double house that he wanted to tear down and this witness told him that if he wanted work of this character that he better get an architect and he suggested the employment of the plaintiff in this case, he frequently saw plaintiff and defendant together in defendants' place of business and he knows that plaintiff went to the defendants' shop, examined everything and told this witness "those fellows want to make a single story and I want to make a two story, you can talk him into doing that, a two story would look better", I asked him how much it would cost and he told me about seven thousand dollars, when I informed defendants of this in the conversation he replied "I don't want a two story building, I cannot pay for it" and plaintiff subsequently told this witness that if they did not want a two story building they had better let the whole matter alone, he testifies substantially that defendants frequently told him that they could not afford to put up any such a building as

the architect wanted them to do, they did not want a two story building and that the plaintiff then being told this by this witness again expressed himself that he had better leave the whole matter alone and let them do it themselves, if he could not make a nice looking building better leave it alone.

This witness further goes on to testify that defendants never wanted to spend more than three thousand dollars and when the plaintiff told them seven thousand they insisted they could not afford it, did not have that much money, they were not willing to do it, that they were hard working men and that they did not need a handsome two story building for their purposes, the sum and substance substantially of the further testimony of this witness who is a business man but not much of an educated man, was to the same effect and the entire conversations were either at his place of business xxx or at defendants and it was thoroughly understood between plaintiff and defendant that this defendant could not spend more than three thousand dollars and they only wanted an ordinary building in which to bake bread and thats what they finally put up and he knows too that Nick Kleanennaks neither reads nor writes, he can about sign his name, when ever he wants anything done that requires reading or writing he calls in witness's clerk to aid and help him.

One of the defendants, Nick Kleanennaks testifies that he is a member of defendants' firm, he had entire charge of dealings with plaintiff, that he is illiterate neither reads nor xxxx writes and he signs his name the best he can, he is somewhat acquainted with figures, he remembers the first time plaintiff called at his place, he never went to plaintiff's office, he did not know where it was, and all the conversations had with plaintiff were in their shop; plaintiff was recommended by his neighbor and former landlord, Mr. Gerber and when plaintiff called at his place, he explained to him as best he could just what building he wanted, and amongst other things said to him "I want a one story building, flat roof",

308

plaintiff answered "no, it will not be right", he then testifies "I don't want to spend a whole lot of money for this" and plaintiff told him "I will see what I can do"; amongst other matters testified to by this witness he says that plaintiff asked him how much he proposed to spend on this building and his answer was about three thousand dollars, no more than that and he says that plaintiff said alright I will see what I can do for you he subsequently returned with plans, did not mention the price until he presented a bill and not being able to read or write when asked to pay a certain amount of money he did pay two hundred dollars but made no promises of paying anything more, believing that he had paid the price in accordance to the building he contemplated putting up; after receiving the two hundred dollars plaintiff said to him, you owe me two hundred and fifty dollars more and his reply was "are you going to charge me that much? And plaintiff said "yes", the plan costs

$7500.00", he immediately made protest and told him he did not want that kind of a plan and plaintiff says that he made that plan for him and it would not fit anybody else's house and walked away from the establishment. Subsequently after he had left, not being able to understand the plans I took them next door to Mr. Gerber, showing them to a Mr. Hart one of the clerks there, who had frequently translated writing to me before, who read it for me and that was the first time that I understood anything at all about the plans which plaintiff says he drew up and presented to me, I never understood it until it was explained to me by Mr. Hart, I did not tell plaintiff to go ahead to get additional bids or ever agree to pay him fifty dollars for that, I told him expressly as I had always done before that I could not afford and would not be willing to pay $7500.00 or $8000.00 for a building and I did not want a building of that kind. He further testifies that he employed Mr. McGowan and he put up the building I wanted just a three wall building of brick and that building cost me

309

$3350.00, that he did not give the plans or specifications left by plaintiff to Mr. McGowan and the building was erected by him for the price and sum as stated and that was the character of building he wanted and no other, that plaintiff presented him with a bill, denies that he agreed and promised that he would pay the difference or $250.00 at the end of the month, denies that he wanted a two story building, that he only wanted a one story building built out of brick and to be used for a bakery to make bread, not a place to sell bread, because he had a place in front, used as a confectionery, where he sold bread, cakes and other kkk things, but in this particular place he only wanted to bake the bread and that is what he testifies he positively told plaintiff to make plans for and nothing else.    This witness on cross examination, considering he is an uneducated man did not waiver materially in any of the testimony given by him in chief, he details that he had been in this Country since 1908, hard working man, was a member of defendants' firm and that he had charge of the building in question and was the only one that knew anything much about it, one way or the other.

Arthur Kleanennaks, one of the defendants and a brother of the witness who had testified in this case neither reads nor writes, cannot sign his name, knew the plaintiff, had saw him come into the shop the first time to have a conversation with his brother Nick and the substantialparts of his testimony confirms what Nick had testified to, that he wanted plans to build a place and told him the kind of place he wanted to build and when Mr. Mohr spoke of $7500.00 during the course of the conver-. sation he was emphatically told by his brother that it was entirely beyond his means, that they could not pay over three thousand dollars; never saw Mr. Mohr but once.

Benjamin Hart, a witness for the defendant, who knew them very well, worked in October and November 1919 for Gerber Brothers and he says that he was present on one occassion at a conversation between plaintiff and the defendant in reference

310

to the proposed building of a bakery for the defendants; that conversation was in 1919, about the latter end of the year and substantially testifies that plaintiff was speaking to Mr. Gerber in order to get him to induce the Greeks next door, so plaintiff called them, to erect a two story structure and that Mr. Gerber told plaintiff, "you know what they told you from the beginning and what they want, they want a one story structure, the cost not to exceed Three thousand Dollars"; Mr. Gerber further told him "I recommended you and I would like to see you get that work."

Witness is not positive but he thinks this conversation between these parties was before plaintiff was employed; subsequently Mr. Nick Kleanennaks came over with the documents heretofore testified to, he asked me to read the bill for him as he could not read, which I did. In a general way this witness testifies that these people were absolutely illiterate, could not read nor write and that he, witness, explained as best he could, the matters testified to.

We have thus endeavored to state substantially the evidence as presented by the testimony/of the witnesses in this case on both sides.

We are of the opinion that on account of the inability particularly of Nick Kleanennaks to express himself in any sort of English to be understood, that plaintiff fell into an error in disobeying the instructions given him by the defendant and attempting to draw plans and specifications for a building which would cost almost three times the amount of money which defendants were willing to pay, and the best proof, in our opinion, of this, is the employment of another contractor by the defendants, who built the structure they wanted and which they expected plaintiff to draw plans and specifications for, costing the sum of $2250.00. It is unfortunate that plaintiff, with a great deal of labor and skill endeavored to make and did make plans and specifications contrary to defendants' orders and against their objections. We are satisfied that plaintiff did

311

exert himself and try to persuade the defendants to accept plans and specifications as presented to them by him, which they had always refused, but we think that having paid him the two hundred dollars, that he is entitled to that amount, but no more.

We are further of the opinion that notwithstanding the counter claim made by defendants in reconvention for the money thus paid, that plaintiff was entitled to same and said claim should and is therefore dismissed.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the Court aqua in favor of plaintiff be and the same is hereby reversed, annulled and avoided, and that the reconventional demand of the defendants be rejected and that there now be judgment in favor of defendant rejecting plaintiff's claim with costs of both Courts.

Judgment reversed.

NO. 8190/0

COURT OF APPEAL
PARISH OF ORLEANS.

8190

OSCAR P. MOHR

vs.

FOUR BROTHERS ICE CREAM CO.

Dinkelspiel; J.

Court of Appeal,
PARISH OF ORLEANS
FEB MAR 13/22

On rehearing.

We have carefully reexamined this case and we find that whilst we were in error in stating that plaintiff was to furnish specifications and plans for a one story building, that we in the original opinion rendered in this case, stated that he was to furnish plans for a two story building, but we did not decide this case for that particular reason. On the contrary the question presented was entirely one of fact; the burden of proof was on the plaintiff; we were satisfied he had not and did not sustain this burden, but on the contrary the evidence preponderates in favor of defendant and for that reason we decided the case as we did.

For the reasons assigned it is ordered, adjudged and decreed that our former opinion rendered in this case be maintained and that the judgment there will not be disturbed and the judgment of the lower Court which was in favor of plaintiff be reversed, anulled and avoided, the reconventional demand of the defendants be rejected and that there be a judgment now in favor of defendants, rejecting plaintiff's claim with costs in both courts.

—Judgment reversed—